Thank you. You may be seated. Our next case is Case 417-0829. Margaret Bontik v. Board of Trustees of the State Employee's Retirement for the appellant. I don't see my little card. I see Mr. Draper, and you are the appellant. I knew that was too easy. Thank you, Mr. Casey. And then, for the appellee, we have Mr. Huzzah. Huzzah. Huzzah. Thank you. Mr. Draper. Thank you, Your Honor. May it please the Court, Counsel, we are happy to be here on behalf of four retirees from the Public Retention Systems of the State of Illinois to address an important constitutional question that revolves around the definition of the word pension when we read the pension clause in the Illinois Constitution. There's no question presented by anyone that the pension clause means exactly what it says. These were the words of the Supreme Court in the past few years. But, with that said, the pension clause means what it says. The dispute in today's case is over what rights are the pension, when we use that word, that are protected. And that's where the dichotomy between the parties occurs because the retirement systems argued, and the circuit court adopted the argument, that all of the process for the administrative determination of an annuity are mere procedures, and the procedures aren't protected, only substantive outcomes. Frankly, I think that that falls right into our argument. If the question is whether or not there's a substantive right that the pension clause protects, the easiest way to analyze it is to simply follow the law as written. And the law as written has a process established through the statute and then ultimately the rules adopted, for example, by the state employee's retirement system that has a detailed procedure for a retiree to apply for an annuity determination. And it's got about seven steps to it. The first one is very informal and not legally binding, which is that we anticipated retirees to ask for an estimate before they retire. Obviously, they want to know what their benefit will be. And the staff calculate, and they're supposed to determine, in cooperation with the employing agency, how many months of creditable service the retiree would have on a given date and what was the correct statutory salary for final compensation that's applied to the formula. And in the case of some people, like David Sharp, whether or not they do or do not qualify for an enhanced formula. So that is given to them, but then the retiree has to actually retire, has to resign employment to be eligible. And at that point, the retiree is at the mercy of the determination that's going to be made because it's going back to employment. That was what the first Sharp appeal that we refer to and the same plaintiff in this case endured. He was told he had enough service credits for the enhanced pension under the statutory formula. And then after retirement, that was confirmed. And going through the steps, the second step is the staff makes an actual calculation that is to be used for a final decision. That's transmitted to an executive committee. The executive committee reviews it and adopts it or not and then puts it on the agenda for the board who gives final ratification. Notably, the application form that any state employee fills out has personal information and background information, social security numbers, but nowhere in that application does the retiree suggest how many months of service that person has, what the correct formula, whether it's enhanced or regular, should be, nor what the final compensation is. That's all out of the hands of the retiree and solely within the hands of, for example, the state employee's retirement system. So in this case, for those three who are part of that system, for example, the retirement system had four separate opportunities to reach the right decision. What we also learned from not only Sharp but, frankly, a line of cases, is that once the board approves in its meeting that final report from the executive committee, we now start the clock for administrative review purposes or for reconsideration. The SCRS, for example, has a rule allowing for reconsideration within 30 days. Otherwise, and it's permissive, and otherwise judicial reviews available within 35. The bottom line is this. At the end of the process, absent judicial review, the decision of the board is a final administrative decision as that's defined in all of our body of administrative law, including the administrative review law. What is the pension that was awarded to each of these plaintiffs? In each case, the annuity determination was made, and the decision actually specifies that upon your lawful date of retirement, you as a retiree are entitled to, and then there's a precise dollar figure down to the penny, of what the monthly pension benefit is. That's a final administrative decision, and that is the definition of what pension right has been conferred. That final figure, even if it's incorrect. There is nothing in the law that says to constitute a final administrative decision, a decision must be correct. In fact, we have final administrative decisions routinely that people challenge under the administrative review law, claiming it's incorrect, whether factually correct or legally wrong. What about under the pension protection clause, the language that speaks to this being an enforceable contractual relationship? And of course, when we talk about a contractual relationship, we have terms of that contractual relationship, and the difficulty for me is, if it is calculated using the wrong formula, and there is an incorrect calculation, that trumps the fact that what's enforceable is this contractual relationship? The contractual relationship, we believe, includes everything, including that there is a process to reach a final decision. And keep in mind, all of the control of that process is in the hands of the retirement system. You know, I hate to repeat, they have four chances to get it right. And as in Sharpe noted, they're not without recourse even after the decision, because they've got, under their own rule, a 30-day window to reconsider, and a 35-day opportunity to seek judicial review. And that was bolstered by a line of cases, including Sola and Rossler and others. This is a firmly set body of law. The contractual relationship is, when you come to the end of your employment, you get to apply, and there's a statutory process for your pension to be determined. When that award is made, that's the pension. Mr. Draper, so the Act was enacted after the decision in Sharpe. How does that affect? The legislation came out just months after the Sharpe opinion came out, and was obviously intended to overrule that decision legislatively. The courts have held, the Supreme Court has held, and we've cited Sinelli, very clearly has said the General Assembly may have lots of powers to regulate things in a prospective manner for the courts of conduct, licenses, for example. But what they cannot do is legislatively undo final judgments of the courts, and we've also shown this court a line of cases that show that administrative decisions are treated in the same vein for race judicata purposes. So it becomes a separation of powers issue. The General Assembly simply cannot pass a law deciding that somebody's judgment in an automobile collision case was wrongly decided, and allow it to be altered. So this legislation fails when it tries to apply to the cases that had already been decided prior to the enactment of the law. And I want to be careful here. We saw class action status. This could have broader implications. But what we've defined as the class, like these plaintiffs, are people whose cases were final prior to the enactment of the law. I don't have any argument to make one way or the other  after the enactment of this change in Public Act 98-1117. So we have a situation where the contractual agreement is you'll be able to apply, and there's a statutory process for us, the retirement system, to decide your annuity. If you disagree, you may seek judicial review. Otherwise, it's a final administrative decision. And that's entitled to preclusive effect. If there's not race judicata for someone like David Sharp, who went through that process, got a determination, then got notified that the pension was unilaterally changing his annuity, going through the administrative hearing with them, judicial review with them, and the appeal in Sharp, only to have this come back even yet one more time with a never-ending process of claiming, if we pension systems make a mistake, you retiree are always subject to the possibility that we're going to change that award. We have a long history of jurisprudence that says that there is a need for there to be some finality in our trials in the court, as well as in our administrative hearing procedures. And that's why the administrative review law defines a final administrative decision the way it does. It's one that resolves the question that's before that agency and terminates the proceedings before the agency. The argument of the retirement systems is it's never terminated. And now the General Assembly has given us this never-ending opportunity for do-over after do-over. So let me just ask a more pointed question with regard to what I previously asked. The act being enacted after the Sharp decision, now we have a situation where there is an allowance of the correction of the determination, the calculation is statutory, and so procedurally the process has changed. So it could be argued it's not a substantive issue, but it's a procedural issue. Well, it is because the final order is an order of the substantive rights of the parties. If it weren't the case that the pension systems were required to calculate the annuity, then an award of the annuity would more likely need to be this. You retiree, you are entitled to a pension in accordance with the formula, whatever that happens to be. And there would be no need for there to be a calculation of the precise amount. There's a perfectly solid reason for that determination to be made because it's intended to define the pension that the person is receiving. And it triggers the obligation then of the retiree to challenge it if it's wrong. It has every possible aspect of what our jurisprudence is about, which is to get the issue out, get it ruled on, and even provide for a level of held review. If we open the door with this kind of legislation, especially to decisions that were made before the legislation, then you may as well have no respect for res judicata as a legal principle. And in fact, to do so, this Court really has to determine that the Supreme Court's decision in Sinelli is wrong. The Supreme Court made it very clear the General Assembly doesn't have that power. So this hinges on retroactivity of the statute. Because if the statute is allowed to make these calculation changes retroactively, there is a change. The judgment wasn't final because it's possible to change the judgment. I guess that's where I'm going. And so final judgments are never final because of this kind of procedure. Now, the retirement system has cited cases where statutes are applied retroactively. We recognize that they are in some cases. But all of the examples that were given to you were things like professional licenses. In each case, professional licenses may be subject to modification. And in fact, we see the General Assembly regularly modify the requirements for a profession, regulate new professions, add new regulations, add new education requirements. And in fact, consequences even for past conduct. But what's different about that is they're still being applied only in a prospective way. So a physician who had committed some felony in the past now faces a statute that says to be a physician in the future, you cannot have this kind of conviction. And that's going to end the license. And there's the difference. Licenses don't have a license protection clause in the Constitution. And the Supreme Court has made clear exactly why the pension clause exists from the various constitutional problems and debates over a century of law dealing with the variability of pensions and how they were applied and determined that in 1970, the Constitution that was written was meant to put an end to all of those questions once and for all and make it a final vested right. And where do we get vested rights other than through an adjudication? That's what happened. And it's that simple in this case. Mr. Draper, is there any significance to the fact that Sonnelli did not involve an administrative review decision? No, it doesn't because we also cited to the court first the reasons why final administrative decisions get the same respect in the law for race judicata purposes as judicial verdicts from the courts. And so, no, I wasn't able to find an administrative law case equal to Sonnelli, which was dealing, of course, with a court judgment. But the courts don't treat for finality purposes, for race judicata purposes, the courts do not treat final administrative decisions any differently than a jury verdict that results in a judgment from a circuit court. And so in this case, unfortunately, the court adopted the argument to view this as merely a protection, and I believe the court even said in orally pronouncing the rationale for the decision in this case that all that's protected is the formula, but not the decision. And if that were the case, there's no reason for there to be such an intricate legal process for reaching the decision, what is your annuity? And that happened in each of these cases, it happened long before this legislation, and the legislation does nothing but allow an opportunity to diminish or impair those final outcomes. That's the pension that was taken away, and that's what's unconstitutional under the pension clause or for race judicata purposes. Unless there's other questions, I'm not able to speak my time. Thank you, you'll have additional time on rebuttal if you so desire. Mr. Hozak? May I please the court, counsel, and Assistant Attorney General Richard Hozak, counsel for the defendant and pension boards in this case, and I urge the court to affirm the circuit court's judgment holding that the contractual rights that are protected by the pension protection clause, the Illinois Constitution, are the substantive rights specified for benefits in the pension code formula that applies. Opposing counsel, my colleague, Mr. Draper, has consistently said that the substantive rights that are protected by the pension clause depend upon the process that's used to implement them. And that's inconsistent with this court's statement in the Cassani case, that it's the pension code formula that determines the substantive rights that are protected. It's directly inconsistent with a holding of the first district recently in the city of Huntryside case, in which the PIA lender was recently denied, where the court explicitly held that an error in the application of the pension formula is not protected by the pension clause and may be corrected. And all of this is well-grounded in the language of the pension clause that says that a contractual right equals membership in a pension system, and the case law holding that the rights that are the terms of that contract are defined by the pension code's substantive formula, not by some process for eliminating them. So this court has a decision to make, which is, which of two things the pension clause protects? Does it protect the substantive formula, or does it instead protect an erroneous misapplication and mistaken implementation of that formula? It can't be both. Before you go further, I'm sorry to interrupt. What's the citation in the first district case that you just referred to? The city of Huntryside case, and it is 2018 ILAP 1st 171029. It is cited in our athlete brief, and the brief at that time noted that a PLA was pending. The court's official records will show that that PLA has since been denied. I see it. I'm sorry, I overlooked it. In paragraph 83 of that decision, it explicitly rejects the very argument that's made that an erroneous decision in the application of the pension formula somehow becomes a vested contractual right. And the history of the contract clause, on which the pension clause was patterned, supports this. The courts have routinely held that the substantive rights that are protected by the contract clause are the substantive terms of the contract, not some procedure that may be used to implement those terms. And so the Illinois Supreme Court in the Boole case over 100 years ago said an erroneous administrative drainage assessment doesn't create a contract. And there are plenty of cases that say even a correct application by a court that results in a judgment doesn't create a contract. The contract right itself is the substantive formula in terms of the contract, not some procedure that's used to apply them. I think it's relevant and persuasive that the federal district court in Oregon, in the Robertson case also cited in our brief, explicitly rejected the idea that there was an impairment of the obligation of contract from a statute that authorized the correction of erroneous pension determinations, saying this is just curative legislation that's dealing with erroneous overpayments for payments that there was no substantive right to receive in the first place. And so the plaintiffs are trying to elevate process into substance, and that's inconsistent with traditional contract principles, which are incorporated into the pension clause. I would note that we're playing a little bit of a game of whack-a-mole when the opposing counsel tries to lose the separation of powers principles that were not a part of the complaint below, were not in the claims below, to the extent that a different legal theory was advanced in a post-judgment motion for reconsideration. Judge Schmidt rejected it, saying in a motion for reconsideration after judgment gets too late, and opposing counsel said, no, it's not a new theory. We're not relying on new legal theories. And in their reply brief, they say in this case, the only issue before the court is whether there are constitutional rights under the pension clause themselves as a constitutional principle. The rage arguments, obviously, as a matter of common law, are separate. They have preserved those. And so to the extent the court would inquire whether the pension clause incorporates by reference separation of powers principles, there's no precedent for that. That's not part of this case. And I don't think that even if this court were inclined to take that great leap and consider whether to do so, it would avail the plaintiffs of anything in this case because separation of powers principles apply to court judgments. They say in their opening brief that there's no reason that that principle shouldn't apply to administrative decisions, but on page 18 where they make that statement, they cite no authority for that proposition. All I can say is that the United States Supreme Court has specifically held that separation of powers principles do not protect administrative decisions, even specifically after the time period you have done has expired. That's the paramino lumber case that was cited in our briefs and has been subsequently cited with approval by the United States Supreme Court in the Plow v. Spencer farm case, which is one of the definitive pronouncements on separation of powers principles. And separation of powers essentially prevent changes in the substantive law after a court judgment has been entered. They don't prevent changes in procedures, including changes in procedures that cure a jurisdictional gap that existed. And that's essentially what we have here. This court in the Sharp case said, there's no statutory authority for CSRS to fix erroneous pension determinations after 35 days have elapsed. If there should be such authority, that's a matter for the legislature to decide. They quickly did so and created such authority. But the Sharp decision only determined in that case that there wasn't such authority, not that the decision after it expired, in that case without such authority, created a contractually vested constitutional right under the pension clause. And I think that it's fairly clear under the authorities we've cited, the reasoning of the City of Countryside case, this court's Pazani decision, the Illinois Supreme Court's decision repeatedly saying that the substantive right protected by the pension clause is the formula in the pension code. It's got to be one or the other. And arguments that there's some sort of justifiable reliance and legitimate expectation in a mistake, in your favor, that's like the monopoly card that says bank error in your favor, $50. That doesn't create a legal right to keep the money. I mean, unjust enrichment, the history of the most ancient equitable cause of action of all is unjust enrichment when there's a payment by mistake more than what was owed. And the pension clause was not intended to overturn all of that. If you will, I will speak briefly to the res judicata principles. I think they're effectively addressed in our brief, which are that common law res judicata principles don't trump a statute. The legislature controls subject to the limits of the Constitution. And in any event, res judicata principles don't prevent the type of things that's occurring here, which is where there's been a change in the law between the prior decision and the later decision, and especially where that change in the law simply creates a jurisdictional authority for a decision that previously was lacking. If the court has any questions, I'd be glad to address them. This is not an estoppel case. This is not a separation of powers case. This is not a case in which the court can just sort of look to see whether they think someone should get more than they were entitled to on the pension clause. This is a case challenging the constitutionality of a statute that says, if you made a mistake, now you can fix it. And it makes perfect sense. It guarantees for plaintiff Margaret Bonacy, for example, the error was against her. It now gives CSRS the authority to fix that mistake. These are ministerial calculations, but with the thousands and thousands of decisions that are made, it happens that sometimes mistakes are made. And sometimes mistakes get through this multilayered process before the court makes a final decision. This statute just gives them the authority, if they discover the mistake, to correct it. But they can't get money that was paid before the mistake was corrected if they discover the mistake more than three years later. That's the case for Plaintiff Bierman. Ten years later, they discover the mistake. She was overpaid close to $40,000. And the statute says, we're sorry. We're not going to let you go back and recollect that money. That's too much. And so they can correct it going forward but not going back. That seems an eminently sensible judgment by the legislature to make with respect to the limits on the ability to correct mistakes for payments that have been already made. But there should be no doubt as to the validity of the statute with respect to correction of past mistakes for payments going forward. Mr. Hozak, what's your response to Mr. Draper's reliance on Sinelli? I think it's several things, Your Honor. First, Sinelli is clearly a separation of powers case, and that restricts the ability of the legislature to overturn important judgments, not administrative decisions. This isn't a separation of powers case. And the pension clause doesn't incorporate separation of powers principles. Sinelli doesn't prevent changes in procedures as opposed to changes in substantive law after a decision is made. And I think that the one authority that we have on the issue with respect to the relevance of the legislature's ability to change administrative decisions, even after the period of time to review them has expired, is the United States Supreme Court's decision in the Paramino-Lumber case, which was not addressed in the reply brief. And it clearly says, even after the time for review of an administrative decision in those cases expires, it's within the legislature's power to change those because you're not changing a court decision. Separation of powers prevents the legislature from approaching upon final decisions of the courts, not administrative agencies. And ultimately, even if you apply the separation of powers analysis to plaintiff's charge, we're not changing the decision in that earlier judicial decision. That was that there was not statutory authority to make the change. We're not overruling that. The legislature said, now there is authority, and that's being applied prospectively. So even if the court were to consider separation of powers principles relevant or to be somehow incorporated into the pension clause, for those reasons we believe that it does not apply to this situation. Thank you, Your Honor. Thank you, counsel. Any rebuttal? Mr. Draper. Yes, let me address the contract analysis that was just put forward because that is how the Constitution puts the pension protection in perspective. The argument of counsel is there's a contractual relationship. What they're arguing is that parties could enter into a valid contractual relationship, completely perform on one side their obligations under the contract, which is to resign your employment and start accepting your annuity, and then the other party to the contract can unilaterally say, oh, what I promised you in exchange for you retiring, I've decided is different. After we've gone through this process. Is that what happened here? That is what happened here. Let's take David Sharp because he went through so much of the process. He not only relied on an estimate which he's got no legal right to rely on, he was given a staff determination, was given an executive committee determination, this is exactly the pension you're entitled to, and the correct formula was in fact used, and the board of trustees adopted it, and his right to bring any challenge expired after 35 days, and the pension system's right to reconsider its own decision expired within the 30 days allowed by its rule. As the Sharp appellate decision said, it's not that. SCRS doesn't have the right to correct a mistake, but there are time limits, and after that we've got a vested decision. And so there's a lot of semantics going on, or perhaps Mr. Hussage and I just really approached the definition of procedural rights and substantive rights differently, and he says the substantive rights are only the words of the statute, and that's not the case. In this case, the statute incorporates as the contract a process for determining what your annuity will be, and that's a legally enforceable right. And if it's not challenged within 35 days, it cannot be challenged. That's solid law under Sokol, Rossler, Sharp, never questioned at any point in our judicial history since those cases were decided. So the suggestions made, there are thousands of cases that the agencies make, there could be a few mistakes, I understand, those mistakes could be all either way. Is this legislation wise moving forward? Maybe it's a step in the right direction. We don't have plaintiffs, so this is not really the focus here. And that's not what this court, of course, is going to decide is the wisdom of the legislation. But that has prospective application may be important, but here we have a substantive ruling, a determination that established a right, a right to receive an annuity. If the pension doesn't mean the right, and it only means the statutory process, then there's nothing that's protected here. Now, argument was also just made that res judicata can't trump a statute, that common law principles give way to statutes. And if that's the case, then the unjust enrichment argument that the retirement system's made fails miserably because they want to apply the unjust enrichment as a way of constraining the definition of the pension protection clause. And if there's really a review of the equities here, the retirees have done nothing, and there's not even a hint that any one of them ever did anything to cause the decision to reach a wrong conclusion. They didn't provide any of the data, they didn't provide any argument, they didn't provide any of the information. And yet the only burden here is put on the retirees if the staff at the retirement system made a wrong calculation. Unfortunately, we have a system of justice that really does say there has to be some finality. We've cited in our opening brief numerous examples of that, especially with the Supreme Court making clear administrative agencies don't get to reopen cases just because they believe a mistake was made. The definition of a final order does not include any requirement that the case be 100% factually and legally accurate. We have to have finality in decisions. And here, after the retirement system has so many levels at which to get it right, and an opportunity even after the board's final decision to correct a mistake, there's no reason to treat the award as anything other than the substantive award of a pension. A pension cannot be diminished or repaired. Thank you, counsel. We'll take this matter under advisement and be in recess.